IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX AGUILAR,<br><br>                Plaintiff,<br><br>   v.<br><br>OFFICER JASON HOOVER; FRESNO<br>COUNTY POLICE DEPARTMENT, et al.,<br><br>                Defendants. | 1:09-cv-01849-AWI-BAM<br><br>**ORDER RE: MOTION FOR**<br>**SUMMARY JUDGMENT**<br><br>(Docs. 38-38-7) |

## I. INTRODUCTION

Defendants Officer Jason Hoover and Fresno Police Department have filed a motion for summary judgment. For reasons discussed below, the motion shall be granted.

## II. FACTS AND PROCEDURAL BACKGROUND

On February 22, 2011, plaintiff Alex Aguilar ("Plaintiff") filed his first amended complaint against defendants Officer Jason Hoover ("Hoover") and Fresno Police Department ("Department," erroneously sued as Fresno County Police Department) et al., asserting one cause of action for federal civil rights violations pursuant to 42 U.S.C. § 1983. Plaintiff alleged as follows:

> "On Thursday evening, July 30, 09 [sic] around 9:30 p.m. my family and I were at a Taco Bell restraunt [sic] on the corner of Shields and First St. in Fresno, CA. We were inside the restraunt [sic] and were the last to leave, since the restraunt [sic] was in the process of closing. When we got into my wife's car, with her driving we observed a black and white police car from the Fresno Police Dept. There was no other traffic movement, and there were two police cars. One got behind our car and turned on its emergency lights. The driver of one police car got out of his car and ask [sic] my wife for her driver lic. [sic] or ID. My wife showed him her driver lic [sic]. I also gave him full name and date of birth."

Plaintiff further alleged:

> "Since I had a warrent [sic] for my arrest and had been bittend [sic] by a police dog before, I panicked. So I got out of my wife's car and ran away. About 3 ½ hours later, around 1:30 a.m. of 7-31-09 I returned to the scene, the Taco Bell rest [sic] was close [sic] to turn myself in before I reached the restraunt [sic] I observed a K-9 police car parked in the alley with no lights there were six police officers did not ID themselfs [sic] and K-9 dog was running loose got on the ground and ID myself the dog, a big K-9 German Shepard [sic], passed me and then it got a signal from the K-9 uniform officer the officer got upset at the K-9 couse [sic] the dog ignored me the animal then tried to bite me so I turn my face tors [sic] the other way put hands on my face in order to prevent it from biting my left cheek."

Plaintiff further alleged:

> "The dog then bit me on the top of my left shoulder, then on the back shoulder and finally under my armpit. I kept yelling at the p. [sic] officers, asking why they were violintng [sic] my rights when I had follow [sic] all of their instructions and procedures. An ambulance finally arrived and the atten [sic] placed me on a roller bed. They took me to the Community Hospital. I received approxima [sic] 16 stitches, 10 in the under my arm [sic] and the rest on my back shoulders now I'm scare [sic] for life. This is the second time that police officers have orderd [sic] their K-9 dogs to bite me, even though I followed all of their instructions. [¶] Since this occured [sic], my wounds are still open and believe that they are infected . . . . I am all scarred for life from top to bottom. I can't no longer where [sic] shorts couse [sic] my leg is all scarred for life from the previous and the present dog bites."

On November 23, 2011, Hoover and Department filed their motion for summary judgment, contending the undisputed facts show that Hoover used objectively reasonable force against Plaintiff and, in any case, is entitled to qualified immunity. Plaintiff did not file a written opposition.

### III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment

2

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see Fed. R. Civ. P. 56(c)(1)(A). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (2010) (citing *Celotex, supra,* at p. 325).  If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538.  A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party.  See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Even if the motion is unopposed, the movant is not absolved of the burden to show there are no genuine issues of material fact (*Henry v. Gill Industries, Inc.,* 983 F.2d 943, 949-50 (9th Cir. 1993)), although the court may assume the movant's assertions of fact to be undisputed for the purposes of the motion and grant summary judgment if the facts and other supporting materials show the movant is entitled to it.  See Fed. R. Civ. P. 56(e)(2), (3).

## IV. DISCUSSION

***A. Section 1983 claim against Hoover*** – Plaintiff's first and only cause of action, asserted against both defendants, is for violation of federal civil rights pursuant to 42 U.S.C. § 1983.  Section 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States

3

or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. "To succeed on a § 1983 claim, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right." *Patel v. Kent School Dist.,* 648 F.3d 965, 971 (9th Cir. 2011) (citing *Tatum v. City and County of San Francisco,* 441 F.3d 1090, 1094 (9th Cir. 2006)). Where an officer has asserted, as here, a defense of qualified immunity, courts evaluating a section 1983 claim "generally proceed in a two-part analysis. The 'threshold question' is '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (abrogated in part on other grounds by *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)). If the Constitution was not violated, that is the end of the inquiry. If there was a violation . . . , [courts] proceed to the question of qualified immunity." *Mattos v. Agarano,* 590 F.3d 1082, 1086 (9th Cir. 2010). The gravamen of Plaintiff's claim is that in arresting Plaintiff, Hoover used excessive force in violation of the Fourth Amendment by employing a K-9 unit (i.e., police dog) to bite and subdue Plaintiff. As the Court shall explain below, the undisputed facts and evidence establish Hoover did not apply any physical force toward Plaintiff, and that the actions of the K-9 officer called in to assist Hoover were "objectively reasonable" under the circumstances and thus did not violate Plaintiff's constitutional right to be free of unreasonable searches and seizures.

***1. Applicable Fourth Amendment principles*** – The Fourth Amendment provides in pertinent part that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated" (U.S. Const., Amdt. 4), and "[a]n officer's use of excessive force to effect an arrest is a violation of a person's Fourth Amendment right to be free from unreasonable searches and seizures." *Bryan v. MacPherson,* 630 F.3d 805, 817 (9th Cir.

4

2010). "A Fourth Amendment claim of excessive force is analyzed under the framework set forth by the Supreme Court in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). That analysis requires balancing the 'nature and quality of the intrusion' on a person's liberty with the 'countervailing governmental interests at stake' to determine whether the use of force was objectively reasonable under the circumstances. *Id.* at 396, 109 S.Ct. 1865. Determining whether a police officer's use of force was reasonable or excessive therefore 'requires careful attention to the facts and circumstances of each particular case' and a 'careful balancing' of an individual's liberty with the government's interest in the application of force. *Id.*; *see Deorle v. Rutherford,* 272 F.3d 1272, 1279-81 (9th Cir. 2001)." *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham, supra,* 490 U.S. at 396-97.

      In the Ninth Circuit, the reasonableness inquiry is conducted in a three-step analysis: " 'First, [courts] assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted.' Second, [courts] analyze 'the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. At this stage of the analysis, [courts] may also consider other factors, such as 'the availability of alternative methods of capturing or subduing a suspect.' Finally, [courts] weigh the gravity of the intrusion against the government's interest to determine whether the force used was constitutionally reasonable." *Mattos, supra,* 590 F.3d at 1086 (quoting *Miller v. Clark County,* 340 F.3d 959, 964 (9th Cir. 2003) and *Smith v. City of Hemet,* 394 F.3d 689, 693, 701 (9th Cir. 2005) (en banc)) (internal citations omitted). Whether the suspect posed an immediate threat to the safety of the officers or others is " 'most important single element' " of the foregoing criteria. *Smith v. City of Hemet,* 394 F.3d 689, 702 (9th Cir. 2005).

5

***2. Constitutional violations*** – Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court, applying the foregoing principles, finds that Hoover did not apply any physical force against Plaintiff.  The Court further finds that the use of force against Plaintiff by the K-9 officer called in to assist Hoover – specifically, that officer's use of a police dog to subdue Plaintiff – was not excessive but objectively reasonable under the circumstances.

The evidence adduced by the defendants shows that on July 30, 2009, Hoover was on duty, in full uniform and in a marked police car, when he responded to a call of a suspicious male Hispanic cruising in a light blue minivan near the residence of a domestic violence victim.  Hoover located a vehicle fitting that description and was informed by the driver, Ruben Trevino, that Trevino was in the area looking to purchase marijuana from an individual known only as "Al."  During the conversation, Trevino's cell phone rang, with the caller ID indicating that the call was from "Al." Hoover assumed Trevino's identity on the phone and agreed to meet "Al" to complete the marijuana transaction in the parking lot of a nearby Taco Bell restaurant.  When Hoover arrived at Taco Bell, he pulled his car behind the only vehicle in the parking lot.  The passenger, a Hispanic male, initially identified himself to Hoover as "Jay," although Hoover recognized his voice as that of "Al."  After speaking to the female driver, the passenger admitted to Hoover that his real name was Alex Aguilar (i.e., that he was Plaintiff).  Hoover returned to his car to check for outstanding warrants, at which point Plaintiff reached into his vehicle, grabbed a bag and ran away.

Plaintiff continued to run from Hoover despite several orders to stop.  As the chase progressed, Plaintiff threw a black bag into a nearby canal.  Hoover eventually tripped over a crack in the sidewalk and was unable to continue pursuit due to a knee injury.  As other officers continued the search, Hoover returned to the canal where he retrieved the bag.  The bag contained three baggies of marijuana.  Hoover then returned to his car, where he obtained a computerized photo of Plaintiff and confirmed Plaintiff was the individual who had fled the scene.  A warrant check revealed Plaintiff had an outstanding felony warrant for burglary and assault with a deadly weapon.  K-9 Officer Russ Cornelison and others were called in to assist Hoover with the search for Plaintiff, who

1  was now wanted for suspicion of possession of marijuana for sale, resisting arrest and the
2  outstanding warrant. The officers were unable to locate Plaintiff during the initial area search.
3       Around 0119 hrs. on July 31, 2009, Cornelison returned to the area in response to a call from
4  a citizen who reported that a male Hispanic fitting the description of Plaintiff was threatening a
5  woman who refused to let him hide in her garage. Prior to his arrival, a police helicopter advised
6  Cornelison that Plaintiff had been spotted and was attempting to conceal himself under a parked car,
7  Despite the presence of several police officers and the helicopter circling overhead, Plaintiff made
8  no effort to surrender, and none of the officers could see him under the car where he was reportedly
9  hiding. By his own testimony, Cornelison soon became concerned for the safety of the officers and
10 the area residents. Cornelison was also concerned that Plaintiff had yet to be searched for weapons
11 and had reportedly threatened citizens if they refused to conceal him from the police.
12      To give Plaintiff the opportunity to surrender without injury, Cornelison made a loud
13 announcement less than 50 feet from the parked car that Plaintiff would be bitten by a police dog if
14 he did not surrender. When Plaintiff did not surrender, Cornelison ordered his dog, Gunther, to
15 search underneath the car. It became apparent to Cornelison that Gunther had located Plaintiff once
16 he heard scuffling and Plaintiff's yelling that a dog was biting him. Cornelison and other officers
17 approached the car, and Gunther was ordered to release his bite as soon as Cornelison saw that
18 Plaintiff's hands were free of weapons. Plaintiff was then arrested without further incident.
19      The record reflects that no physical force was inflicted against Plaintiff by Hoover. Only
20 Cornelison was in control of the police dog, and he instructed the dog to search underneath the car
21 where Plaintiff had been spotted. Thus, no reasonable trier of fact could find that Hoover used
22 excessive force or violated Plaintiff's Fourth Amendment rights in any manner. (The record suggests
23 Hoover was not even present at the time of Plaintiff's arrest.) Accordingly, the Court finds Hoover
24 has met his initial burden on summary judgment, and the burden shifts to Plaintiff to produce
25 evidence creating a genuine issue of material fact. Plaintiff has not filed a written opposition or
26 produced any evidence. Therefore, summary judgment in favor of Hoover must be granted.

To the extent the first amended complaint could be read to state a claim against Cornelison, who has not been named as a defendant, no reasonable trier of fact could find that Cornelison's use of the police dog was not objectively reasonable under the circumstances. Plaintiff had been detained by Hoover on suspicion of possession of marijuana for sale (a felony under California law; *see* Cal. Health & Safety Code, § 11359), and he was also wanted for felony burglary and assault with a deadly weapon. Thus, the crimes at issue were relatively severe. Plaintiff actively resisted arrest by fleeing the scene, and during the ensuing police pursuit he pointed his finger at Hoover as if to simulate a gun. He then attempted to evade arrest by hiding in a residential neighborhood, and there were reports that Plaintiff was threatening residents if they refused to let him hide. By any objective measure, Plaintiff posed an immediate threat to the safety of the officers and others. Plaintiff later concealed himself underneath a car, where he could not be seen, making it difficult if not impossible for the officers to subdue him themselves without jeopardizing their own safety. Plaintiff presumably heard Cornelison's verbal warning that he would be bitten by the dog if he did not surrender, yet he refused to comply despite this knowledge. In the Court's view, the use of a police dog to subdue and apprehend Plaintiff was objectively reasonable given these facts. *See Mendoza v. Block,* 27 F.3d 1357, 1362-63 (9th Cir. 1994). There is no dispute the dog injured Plaintiff. But contrary to Plaintiff's claims that his injuries were severe and he was "scarred . . . from top to bottom" and all over his shoulders and legs, the evidence in the record shows the only injury sustained by Plaintiff was a minor bite wound to his left shoulder. Furthermore, Cornelison immediately ordered the dog to release Plaintiff as soon as he saw Plaintiff had no weapons. No reasonable jury could find the force inflicted by Cornelison through the dog was sufficiently excessive to rise to the level of a constitutional violation. There is no evidence the officers applied any force toward Plaintiff not involving the dog (e.g., by punching, kicking or beating Plaintiff). Because there are no genuine issues of material fact as to whether the conduct of the officers violated Plaintiff's constitutional rights, the Court need not consider the issue of qualified immunity, and summary judgment in favor of the individual officers must be granted.

***B. Section 1983 claim against Department*** – Plaintiff has also asserted a section 1983 claim against Department stemming from the actions of its officers. The defendants, citing *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), contend summary judgment should be granted in favor of Department because Plaintiff has failed to articulate a cognizable theory of public entity liability. Section 1983 does not impose liability on a public entity under respondeat superior principles. *Monell, supra,* 436 U.S. at 691. Instead, an entity may be held liable under section 1983 for an employee's constitutional violations where the act "alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or when the injury was inflicted by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id*. at 690-91, 694. A municipality's "failure to train its [police officers]" may be construed as a policy or custom underlying a section 1983 claim where such failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Alternatively, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a [public entity] to liability on the theory that the relevant practice is so widespread as to have the force of law." *Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) (citing *Monell, supra,* 436 U.S. at 690-91). A public entity is not liable simply because its employees deprived a plaintiff of his or her constitutional rights; the plaintiff must show the entity's policies or customs caused the deprivation. *Monell, supra,* 436 U.S. at 692.

Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds Plaintiff has failed to establish the existence of any policy, practice or custom of Department's resulting in the alleged violation of Plaintiff's Fourth Amendment rights. Furthermore, as the Court concluded above, Plaintiff has failed to create a genuine issue of material

9

fact regarding any of Hoover's or Cornelison's alleged constitutional violations. Without an underlying constitutional violation by an employee, a public entity cannot be held liable under section 1983. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). Accordingly, summary judgment in favor of Department must be granted.

## V. DISPOSITION

Based on the foregoing, the motion of defendants Officer Jason Hoover and Fresno Police Department for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: January 3, 2012

CHIEF UNITED STATES DISTRICT JUDGE